No. 25-40117

IN THE

# United States Court of Appeals for the Fifth Circuit

MICHAEL KEVIN ADAMS,
*Petitioner–Appellant,*

v.

ERIC GUERRERO, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,
*Respondent–Appellee.*

On Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division
USDC No. 4:21-CV-207

## BRIEF OF RESPONDENT-APPELLEE

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division
Appeals Division

JOSEPH CORCORAN
Deputy Chief, Criminal
Appeals Division

CARA HANNA
Assistant Attorney General
State Bar No. 24055622
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
Cara.Hanna@oag.texas.gov

*Counsel for Respondent-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellee, as a governmental party, need not furnish a certificate of interested persons.

s/ Cara Hanna
CARA HANNA
Assistant Attorney General
*Counsel of Record*

*Counsel for Respondent-Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2)(c), oral argument should be denied because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."

i

## TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ............................................i

STATEMENT REGARDING ORAL ARGUMENT ....................................i

TABLE OF CONTENTS ......................................................................ii

TABLE OF AUTHORITIES ................................................................iv

INTRODUCTION ...............................................................................1

StATEMENT OF JURISDICTION ......................................................1

STATEMENT OF THE ISSUE ............................................................2

STATEMENT OF THE CASE ..............................................................2

I.    Procedural History ...........................................................2

II.   Case Facts........................................................................3

STANDARD OF REVIEW....................................................................4

SUMMARY OF THE ARGUMENT .......................................................4

ARGUMENT .....................................................................................5

I.    The Powerful Limits to This Court's Review .................................5

A.    Layer One: the highly deferential standard of *Jackson v. Virginia* ................................................................................ 6

B.    Layer Two: Deference squared under AEDPA's "highly deferential" standard in § 2254 cases ...................................... 8

II.    Reasonable Jurists Would Not Debate the District Court's Rejection of Adams's Claim That There Was Legally Insufficient Evidence to Support His Conviction. ............................................................ 10

CONCLUSION .................................................................................. 18

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ........................ 20

CERTIFICATE OF SERVICE .............................................................. 20

CERTIFICATE OF COMPLIANCE WITH ECF STANDARDS ............ 21

# TABLE OF AUTHORITIES

**Cases**                                                                       **Pages**

*Adams v. Lumpkin*, 695 F. Supp. 3d 815 (N.D. Tex. 2023) ......................3

*Adams v. State*, No. 05–16–01361–CR, 2018 WL 2355280 (Tex. App.—Dallas May 24, 2018) ................................................................2, 3, 13

*Adams v. Texas*, 586 U.S. 1248 (2019)........................................................2

*Alexander v. McCotter*, 775 F.2d 595 (1985)...........................................17

*Barrientes v. Johnson*, 221 F.3d 741 (5th Cir. 2000) ...............................4

*Blue v. Thaler*, 665 F.3d 647 (5th Cir.  2011).........................................10

*Buntion v. Quarterman*, 524 F.3d 664 (5th Cir. 2008)............................4

*Cavazos v. Smith*, 565 U.S. 1 (2011)......................................................7, 8

*Coleman v. Johnson*, 566 U.S. 650 (2012) ................................6, 9, 17–18

*Ford v. Davis*, 910 F.3d 232 (5th Cir. 2018) ........................................9, 10

*Harrington v. Richter*, 562 U.S. 86 (2011)..............................................10

*Herrera v. Collins*, 506 U.S. 390 (1993)....................................................7

*Jackson v. Virginia*, 443 U.S. 307 (1979) ..........................................*passim*

*Johnson v. Cain*, 347 F. App'x 89 (5th Cir. 2009) ..................................14

*Marler v. Blackburn*, 777 F.2d 1007 (5th Cir. 1985)..............................17

*McDaniel v. Brown*, 558 U.S. 120 (2010)................................................14

*Miller v. Thaler*, 714 F.3d 897 (5th Cir. 2013) ........................................9

*Nelson v. Lumpkin*, 72 F.4th 649 (5th Cir. 2023) .....................................4

*Parker v. Matthews*, 567 U.S. 37 (2012) ................................................9

*Ramirez v. Dretke*, 396 F.3d 646 (5th Cir. 2005).......................................4

*Ramirez v. Dretke*, 398 F.3d 691 (5th Cir. 2005).....................................17

*Rivera v. Quarterman*, 505 F.3d 349 (5th Cir. 2007) ...............................4

*Santellan v. Cockrell*, 271 F.3d 190 (5th Cir. 2001)..................................7

*Shoop v. Hill*, 586 U.S. 45 (2019)..........................................................8

*Terry v. Hooper*, 85 F.4th 750 (5th Cir. 2023) ....................................5–9

*United States v. Fields*, 977 F.3d 358 (5th Cir. 2020)...............................7

*United States v. Nguyen*, 28 F.3d 477 (5th Cir. 1994) ............................17

*United States v. Terrell*, 700 F.3d 755 (5th Cir. 2012)...........................15

*Valdez v. Cockrell*, 274 F.3d 941 (5th Cir. 2001).....................................9

*Wood v. Allen*, 558 U.S. 290 (2010).....................................................10

**Statutes**

28 U.S.C. § 1291................................................................................2

28 U.S.C. § 2241................................................................................1

28 U.S.C. § 2253(c).............................................................................2

28 U.S.C. § 2254, Antiterrorism and Effective Death Penalty Act of 1996
................................................................................*passim*

Tex. Code Crim. Proc. art. 11.071, § 5 ....................................................... 4

Tex. Penal Code Ann. § 19.02(b)(1) ........................................................11

Tex. Penal Code Ann. § 19.03(a)(2) ........................................................11

Tex. Penal Code Ann. § 36.06(a)(1)(B).....................................................11

**Rules**

Federal Rules of Appellate Procedure 32(a)(7) .....................................3–4

# INTRODUCTION

Michael Kevin Adams was convicted and sentenced to life imprisonment without parole for the capital murder of Nicole Leger ("N.L.") by causing her death in the course of committing or attempting to commit the offense of retaliation. Now, Adams claims there is insufficient evidence to support his conviction. But Adams has not overcome the deference owed to the jury's determination and resolution of any conflicts of the evidence, as well as the deference owed to the supported inferences made by the jury—*especially* when layered under AEDPA's own deference to the state court's decision. The district court's judgment should therefore be affirmed.

# STATEMENT OF JURISDICTION

This appeal proceeds from a federal habeas petition filed below pursuant to 28 U.S.C. §§ 2241 and 2254. On February 26, 2025, the district court issued its order and final judgment, denying Adams's petition. ROA.225–232.

A judge of this Court subsequently granted a certificate of appealability (COA) on whether sufficient evidence supports Adams's conviction. Order, *Adams v. Lumpkin*, No. 25-40117, Doc. 34-2 (5th Cir.

Oct. 10, 2025) (Order). The Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 2253(c).

## STATEMENT OF THE ISSUE

Whether Adams demonstrated, using clearly established Supreme Court law, that there is insufficient evidence to sustain his conviction, as dictated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See* Order at 2.

## STATEMENT OF THE CASE

### I.    Procedural History

Adams was indicted, convicted, and sentenced to life imprisonment without parole for capital murder, in causing the death of N.L. while in the commission, or attempted commission, of the felony offense of retaliation. ROA.15795–15796, 15804–15806. He pursued direct appeal in the Fifth Court of Appeals of Texas, followed by filing a petition for discretionary review in the Texas Court of Criminal Appeals ("CCA") and a petition for writ of certiorari in the Supreme Court of the United States, all to no avail. ROA.339–394, 430–459; *Adams v. State*, No. 05–16–01361–CR, 2018 WL 2355280 (Tex. App.—Dallas May 24, 2018) (unpublished); *Adams v. State*, No. PD-0637-18 (Tex. Crim. App. Oct. 31, 2018); *Adams v. Texas*, 586 U.S. 1248 (2019). Adams returned to the CCA

2

for state habeas proceedings, where the CCA issued its denial of relief without written order. ROA.15859–15877, 15739.

Adams then filed a federal habeas petition in the district court on March 18, 2021, raising three claims. ROA.6–15. Among those claims, Adams alleged insufficient evidence supported his conviction. ROA.11, ROA.32–36. The district court denied Adams's claim. ROA.225–227, 231; *Adams v. Lumpkin*, 695 F. Supp. 3d 815, 835–50 (N.D. Tex. 2023).

Adams appealed to this Court. The Court granted COA, limited to the issue of whether sufficient evidence supports his conviction for capital murder. Order at 2.

## II.    Case Facts

In its opinion in Adams's direct appeal proceedings, the Fifth Court of Appeals of Texas summarized in detail the facts presented at trial. *Adams*, 2018 WL 2355280, at *2–10. The district court adopted the findings of the Report and Recommendation of United States Magistrate Judge ("R&R"), which cited the state intermediate court's summary of facts. ROA.231, 165–175. Adams does not contest this summary of evidence. Accordingly, in the interest of complying with Rule 32(a)(7) of

the Federal Rules of Appellate Procedure, the Director relies on these summaries.

## STANDARD OF REVIEW

The district court's application of AEDPA is a question of law and is therefore subject to de novo review. *Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008). In a federal habeas appeal, when examining mixed questions of law and fact, the Court employs a de novo standard of review for legal conclusions "by independently applying the law to the facts found by the district court, as long as the district court's factual determinations are not clearly erroneous." *Ramirez v. Dretke*, 396 F.3d 646, 649 (5th Cir. 2005) (citing *Barrientes v. Johnson*, 221 F.3d 741, 750 (5th Cir. 2000)). "A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole." *Rivera v. Quarterman*, 505 F.3d 349, 361 (5th Cir. 2007).  This Court may also affirm on any ground supported by the record. *Nelson v. Lumpkin*, 72 F.4th 649, 656 (5th Cir. 2023).

## SUMMARY OF THE ARGUMENT

Adams fails to show that the district court erroneously determined that he did not vault the AEDPA re-litigation bar against his claim of insufficient evidence. 28 U.S.C. § 2254(d). Namely, the district court did

not err in its review of the intermediate state court's application of *Jackson*, nor did the court err in its understanding of the sufficiency standard set out in *Jackson*. In applying the *Jackson* standard, the intermediate state court reasonably rejected Adams's issues with the evidence and inferences drawn by the jury from the evidence. His insufficiency claim simply entails complaints about the jury's resolution of any conflicts among the presented evidence, or about the credibility and weight afforded to various pieces of evidence and witnesses. The Supreme Court has clearly established that such determinations are within the purview of only the jury. Therefore, no reasonable jurist could debate that the district court did not err when it found Adams did not overcome AEDPA deference and was not entitled to federal habeas relief on his claim of insufficient evidence. Consequently, the district court's judgment should be affirmed.

## ARGUMENT

### I.    The Powerful Limits to This Court's Review

A federal habeas claim brought under *Jackson v. Virginia*, is subject to a "twice-deferential" standard of review. *Terry v. Hooper*, 85 F.4th 750, 754 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1074 (2024); *see*

*also Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) ("We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."). The first layer of deference is to the jury's determinations at trial, and the second layer of deference is to the state court's decision as to the jury's determinations. *Terry*, 85 F.4th at 754.

A.    **Layer One: The highly deferential standard of *Jackson v. Virginia***

Here, Adams seeks federal habeas relief on sufficiency-of-the-evidence grounds, which is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Terry*, 85 F.4th at 754. Surmounting *Jackson*'s highly deferential standard is difficult even before applying the relitigation bar in 28 U.S.C. § 2254(d). Under *Jackson*, "it is not the reviewing court's role to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt[.]'" *Terry*, 85 F.4th at 754 (quoting *Jackson*, 443 U.S. at 318–19) (emphasis in original). Instead, the reviewing court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotations omitted) (emphasis in original).

"In reviewing the record, courts do not 'reevaluate the weight of the evidence or . . . the credibility of the witnesses[.]'" *Id.* (quoting *United States v. Fields*, 977 F.3d 358, 363 (5th Cir. 2020)) (alteration in original). "Nor is it 'necessary that the evidence exclude every reasonable hypothesis of innocence; the jury is free to choose among reasonable constructions of the evidence.'" *Id.* (quoting *Fields*, 977 F.3d at 363). Moreover, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather, whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Critically, *Jackson* also

> unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—*even if it does not affirmatively appear in the record*—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (quoting *Jackson*, 443 U.S. at 319) (emphasis added). The Supreme Court has acknowledged that while doubts about a defendant's guilt "are understandable. . . . it is not the job" of the reviewing court "to decide whether the State's theory was correct" when the "jury decided that question, and its decision is supported by the

7

record." *Id.* "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

### B.    Layer Two: Deference squared under AEDPA's "highly deferential" standard in § 2254 cases

AEDPA[1] adds a second layer of deference to *Jackson*'s already deferential standard. Specifically, AEDPA "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." *Shoop v. Hill*, 586 U.S. 45, 48 (2019) (per curiam). Under the statutory provision at issue here, i.e., 28 U.S.C. § 2254(d), "federal courts cannot grant relief unless the state adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, or it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Terry*, 85 F.4th at 753 (internal quotation marks omitted). "In other words, '[t]o satisfy the standards of § 2254(d), a state prisoner must show that the state court's

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.

8

ruling on his claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Miller v. Thaler*, 714 F.3d 897, 901 (5th Cir. 2013)). As state court's "decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the 'decision was objectively unreasonable." *Id.* at 754 (quoting *Parker v. Matthews*, 567 U.S. 37, 43 (2012)). On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Johnson*, 566 U.S. at 651 (internal quotation marks omitted).

Additionally, the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Ford v. Davis*, 910 F.3d 232, 234 (5th Cir. 2018). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). In other words, as "long as there is some indication of the legal basis for the state court's

denial of relief," the federal courts may infer the state court's factual findings even if they were not expressly made." *Ford*, 910 F.3d at 235. Moreover, a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Blue v. Thaler*, 665 F.3d 647, 655 (5th Cir. 2011) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

"If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## II. Reasonable Jurists Would Not Debate the District Court's Rejection of Adams's Claim That There Was Legally Insufficient Evidence to Support His Conviction.

Adams argues that the district court erred in finding that the intermediate appellate court did not unreasonably deny him habeas relief on his claim of insufficient evidence under *Jackson*. App. Br. at 17–29. More specifically, Adams asserts that there was insufficient evidence that demonstrated he murdered N.L., given that no evidence directly tied him to causing her death. *See id.* at 27–29. But a rational trier of fact could find beyond a reasonable doubt that Adams caused N.L.'s death,

based upon the circumstantial evidence presented and inferences drawn therefrom; accordingly, the district court's rejection of this claim is not debatable.

Under section 19.03(a)(2) of the Texas Penal Code, a person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit a particular felony, including retaliation.[2] Tex. Penal Code § 19.03(a)(2) (West 2013). A person commits murder if he "intentionally or knowingly causes the death of an individual." *Id.* § 19.02(b)(1).

Both the R&R and the district court's opinion cited evidence presented at trial that, when collectively viewed in the light most favorable to prosecution, would support a rational trier of fact's finding each element of capital murder beyond a reasonable doubt. The R&R quoted the opinion of the Fifth Court of Appeals of Texas, citing the following evidence presented at trial:

---

[2] Retaliation is committed when a person "intentionally or knowingly harms or threatens to harm another by an unlawful act," including "in retaliation for or on account of the service or status of another as a . . . person who has reported or who the actor knows intends to report the occurrence of a crime." *Id.* § 36.06(a)(1)(B). Adams does not challenge the murder occurred in the commission or attempted commission of retaliation.

(1) [Adams] was not indicted for the March 2013 sexual assault of N.L. until September 27, 2013; (2) in June 2013, N.L. and her son moved to Melissa[, Texas], "mostly to escape [Adams]"; (3) [Adams] had threatened to kill N.L. if she testified in the sexual assault case and she was "scared to death" when she believed he had discovered where she lived; (4) in mid-August, a blue tarp and handcuffs similar to those used in the March 2013 sexual assault were left on N.L.'s front porch; (5) during the week before N.L. was killed, searches were conducted on [Adams]'s work computer under his username to locate GPS coordinates at and around N.L.'s home; (6) N.L. was shot with a .22–caliber handgun sometime between 8 a.m. and 4:30 p.m. on September 9, 2013; (7) on that date, the front door was unlocked when N.L.'s son arrived home from school, screws possibly were missing from the latch on N.L.'s bedroom window, and a neighbor saw a person slouched down in a truck sitting in front of N.L.'s house at 8:15 a.m.; (8) although the truck seen by the neighbor matched the description of Greer's truck, Greer's time sheets showed he was working at that time; (9) [Adams] stopped using his cell phone several days before the date N.L. was killed and resumed cell phone use at 11:13 a.m. on the date of the killing; (10) [Adams] did not have a confirmed alibi for that morning; (11) during a search of [Adams]'s home, police found a photograph of a gun case containing two .22–caliber firearms, with suppressors; (12) in a storage unit leased by [Adams]'s ex-wife, police found a gun case similar to the case in that photograph that contained one suppressor, but no .22–caliber firearms; (13) during a search of [Adams]'s truck, police found a small screw on the front floorboard that was similar to the type used in guns; (14) at the crime scene, [Adams]'s touch DNA was found on the outer-facing surface of a condom that was sitting atop "fresh trash" in the master bathroom wastebasket, which was lined with a plastic liner; and (15) although multiple items from the crime scene were tested, no other DNA of [Adams] was found at the scene.

ROA.185 (quoting *Adams*, 2018 WL 2355280, at *15). The district court also "provide[d] a few examples" of evidence presented at trial that supports Adams's conviction:

> the victim and her son moved to Melissa "mostly to escape [Adams];" Adams threatened to kill the victim if she testified against him in the 2013 sexual assault case and "she was 'scared to death' when she believed he had discovered where she lived;" at one point "a blue tarp and handcuffs similar to those used in the March 2013 sexual assault were left on [the victim's] front porch;" Adams used his work computer and username to "locate GPS coordinates at and around [the victim's] home" the week before she was killed; Adams "stopped using his cell phone several days before the date [the victim] was killed and resumed cell phone use at 11:13 a.m. on the date of the killing;" Adams did not have an alibi for the morning of September 9, 2013, when the killing occurred; officers found photos of a gun case containing two .22-caliber firearms with suppressors during a search of Adams' home; and officers found a similar gun case containing one suppressor, but no firearms in a storage unit leased by Adams' ex-wife.

ROA.226 (citing *Adams*, 2018 WL 2355280, at *15).

Here, Adams first presses the same argument raised in his federal habeas petition: that the "vast majority of the [fifteen] pieces [of evidence identified by the Fifth Court of Appeals] are innocuous." App. Br. at 19; ROA.33. However, this argument fails to show the district court erred when it denied this claim, because the entirety of the record must be reviewed in whole under *Jackson*, not parsed out for individual review.

13

*See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *see also Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial.").

When viewing the evidence as a whole, a rational trier of fact could have reasonably inferred Adams killed N.L. in retaliation for her initiating a serious felony charge against Adams in March 2013 when he had violently sexually assaulted her. The jury's reasonable inference based upon evidence of events that included (1) at least one act of terrorizing N.L. after she fled their shared home to another city,[3] where Adams had taunted her with visually similar tools that he had used when he brutally assaulted her;[4] (2) escalated search and tracking activity on Adams's computer for N.L.'s home location[5] that she had attempted to

---

[3] ROA.4385, 4387.

[4] ROA.4186–4187 (N.L.'s written statement when she reported Adams sexually assaulted her, describing how her hands, her feet, plus her hands and feet together were bound with handcuffs, zip ties, and rope, and placed on a blue tarp in Adams's garage), 4390–4391 (a neatly-folded blue tarp and set of handcuffs were left on the porch N.L. and her son shared).

[5] ROA.4972–4977 (GPS coordinates recovered and analyzed).

14

keep hidden from Adams;[6] (3) a "window of opportunity" on the day N.L. was found murdered, when there was no substantiated accounting for Adams's whereabouts;[7] and (4) the presence of Adams's touch DNA on the surface of one of the condoms recovered at the scene.[8]

Certainly, Adams provides a plausible theory that another individual murdered N.L., given that several DNA contributors were separated out from samplings taken from various pieces of evidence, and that a vehicle that was seen in front of N.L.'s house matched the description of a vehicle driven by N.L.'s love interest, a former City of Melissa police officer. App. Br. at 9–10, 20–21, 24. But to be sufficient to sustain a conviction, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012).

---

[6] ROA.4389–4390, 4525-4526 (N.L.'s friend entered his name on the rental agreement for N.L.'s new home in Melissa, Texas, to help her "hide from [Adams].").

[7] *See* ROA.4475 (officer testimony of Adams's statement about activities on day N.L. was murdered).

[8] ROA.4708–4709, 4792–4802.

Also, Adams insists that he has consistently argued "the evidence presented at *his* trial 'doesn't add up to sufficient evidence'"—and that he does not challenge the jury's credibility determinations, weighing of evidence, or resolution of conflicts of the evidence. App. Br. at 25 (emphasis in original). But the core of Adams's arguments, *id.* at 19–24, contradicts the surface. He casts doubt upon the value placed upon "an ordinary machine screw" that was recovered from his truck that was identified as possibly part of a gun. He minimizes the significance of missing guns from his recovered gun case in his ex-wife's storage unit, since he was an active gun hobbyist and licensed firearms dealer. He undermines the weight the jury may have afforded the groove pattern of the bullets recovered from N.L.'s home.

He suggests that only an irrational juror would ignore the evidence that depicts his whereabouts in the latter part of the day of N.L.'s murder. App. Br. at 27. He implies that only an irrational juror would reject the normalcy of having little to no cell phone activity at all for the days and hours preceding N.L.'s death. App. Br. at 28. He urges only an irrational juror would overlook the possibility that the presence of his touch DNA at the scene could have transferred from some moment in

16

time when he and N.L. had lived together, months before she had fled him and moved to another city. App. Br. at 22–23.

But Adams's arguments merely provide an alternate view of a sliver of the evidence that was presented to the jury—evidence that spanned six days of trial, from thirty-three witnesses. Again, it is uncontested that the Court must accept all credibility determinations and conflicting inferences in favor of the jury's verdict, and "[a] federal habeas court is not authorized to substitute its interpretation of the evidence for that of the factfinder." ROA.187 (citing *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005); *United States v. Nguyen*, 28 F.3d 477, 480 (5th Cir. 1994); *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985); *Alexander v. McCotter*, 775 F.2d 595, 598 (1985)); ROA.211 (generally acknowledging deference is owed to credibility determinations and that circumstantial evidence can support conviction); ROA.231 (adopting R&R). Indeed, the Supreme Court has recognized that "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts." *Johnson*, 566 U.S. at 655–56 (quotation marks omitted). "[T]he only question . . . is whether [the jury's]

17

finding was so insupportable as to fall below the threshold of bare rationality." *Id.* at 655.

Here, Adams's boiled-down arguments cannot form the basis upon which habeas relief can be granted, where he essentially argues that the jury got it wrong when they were presented with contradictory evidence which they had to resolve; that the jury incorrectly determined the credibility and weight of evidence and witnesses; and that direct evidence was needed to show Adams actively murdered N.L. But his choice of wording fails to demonstrate that the district court erred when it denied federal habeas relief for his insufficiency-of-the-evidence claim. Consequently, the district court's judgment that Adams is not entitled to habeas relief under 28 U.S.C. § 2254(d) should be affirmed.

## CONCLUSION

For the foregoing reasons, the Director asks this Court to affirm the district court's judgment in all respects.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

JOSEPH P. CORCORAN
Deputy Chief,
Criminal Appeals Division

s/ Cara Hanna

*Lead Counsel        CARA HANNA*
Assistant Attorney General
Criminal Appeals Division
State Bar No. 24055622

P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
Cara.Hanna@oag.texas.gov

*Attorneys for Respondent–Appellee*

19

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I do hereby certify that this brief complies with Fed. R. App. Proc. 32(a)(7)(C) and that it contains 4,123 words in Word 2016, Century Schoolbook, 14 points.

s/ Cara Hanna
CARA HANNA
Assistant Attorney General

## CERTIFICATE OF SERVICE

I filed this brief via the Court's ECF system on the 18th day of December, 2025. Opposing counsel, Brett Ordiway, is a registered filer and deemed served.

s/ Cara Hanna
CARA HANNA
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE WITH ECF STANDARDS

I do hereby certify that (1) all required privacy redactions have been made pursuant to Fifth Circuit Rule 25.2.1; (2) this electronic submission is an exact copy of the paper documents; and (3) this document has been scanned using the most recent version of a commercial virus-scanning program and is free of viruses.

s/ Cara Hanna
CARA HANNA
Assistant Attorney General